UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
GEETA BUGTANI,

                Plaintiff,

    -against-

DISH NETWORK LLC,

                Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
18-CV-5003 (AMD) (RER)

**ANN M. DONNELLY**, United States District Judge:

On August 30, 2018, the *pro se* plaintiff, Geeta Bugtani, brought this action alleging discrimination, hostile work environment, and retaliation against her former employer, Dish Network. The plaintiff also claims whistleblower protection under the Sarbanes-Oxley Act, 18 U.S.C.A. § 1514A. On November 5, 2018, the defendant moved to compel arbitration and dismiss the complaint. For the reasons that follow, the defendant's motion to compel arbitration of the plaintiff's discrimination, hostile work environment, and retaliation claims is granted. The plaintiff's whistleblower claim is dismissed. The action is stayed pending arbitration.

## BACKGROUND[1]

The plaintiff was employed as a customer experience representative at DISH Network from sometime in January of 2017 until March 3, 2018. (ECF No. 1 at 4, 11; ECF No 15-1 at 32.) During her employment orientation, she signed an arbitration agreement with the

---

[1] I consider documents outside of the pleadings, including documents attached to the parties' motion briefs, for purposes of deciding a motion to compel arbitration. *See Faggiano v. CVS Pharm, Inc.*, 283 F.Supp.3d 33, 34 n.1 (E.D.N.Y. 2017) (citing *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) ("While it is generally improper to consider documents not appended to the initial pleading or incorporated in that pleading by reference in the context of a Rule 12(b)(6) motion to dismiss, it is proper (and in fact necessary) to consider such extrinsic evidence when faced with a motion to compel arbitration"); *see also Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32–33 (2d Cir. 2001) (vacating in part district court's order compelling arbitration based on testimonial affidavit submitted by appellant).

company, (ECF No. 1 at 32; ECF No. 11 ¶ 2; ECF No. 11-1 at 2-4), which reads, in relevant part:

> 1. In consideration of the mutual promises within this Agreement, Employee and DISH mutually agree that any past, present or future claim, controversy, and/or dispute between them, including without limitation any claim or dispute arising out of or related to Employee's . . . employment, and/or termination of employment . . . shall be resolved by binding arbitration administered by the American Arbitration Association
>
> 2. A Party who wishes to arbitrate a Claim must prepare a written demand for arbitration . . . that identifies the claims asserted . . . That Party must file the Request for Arbitration – along with a copy of this Agreement
>
> 7. The Arbitrator shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Agreement
>
> 15. Employee and DISH voluntarily agree to arbitrate all claims covered by this agreement.

(ECF No. 1 at 49; ECF No. 11-1 at 2-4.) The plaintiff contends that she signed a second policy without reading the contract. (ECF No. 14 at 5.) She was told to sign a "blank screen" or risk termination. (*Id.* at 5; ECF 18 at 1.)

The plaintiff alleges that she suffered repeated verbal, physical, and sexual harassment during her employment. (ECF No. 1 at 11-13.) One colleague called her the "hired help" and "aiy Bengali," a reference to her national origin. (*Id.* at 11.) Another colleague told her that she looked "so hot" and "ma[de him] want to hurt [his] wife." (*Id.* at 11, 43-45.) A third colleague told her that her dress excited him. (*Id.* at 11.) When the plaintiff reported the harassment to her "[c]oach," (*Id.* at 11), he allegedly said she was "trouble," and threatened to "tell HR [that

she was] bothering" him.[2] (*Id.* at 11.) He delayed her performance review and refused to take calls from customers about her performance. (*Id.* at 12-13.)

According to the plaintiff, "[c]onsumers in 10 states must be made aware of their right[s] pertaining to protection plan [and] tech visits[,]" (*Id.* at 6), although the company encouraged employees to misrepresent the cost of a protection plan to customers, and to add programming to customers' plans without their consent. (*Id.* at 13.) The plaintiff claims that the fraud "could raise concerns" under the Sarbanes-Oxley Act. (*Id.* at 4.)

The plaintiff was terminated on March 3, 2018. (ECF No. 1 at 4.) She believes the company fired her because she refused to be part of the company's fraudulent practice, and as retaliation from her coach. (*Id.* at 13.) The plaintiff filed a complaint against the defendant with the Equal Employment Opportunity Commission. (ECF No. 11-1 at 8-12.) The EEOC granted the plaintiff a Right to Sue letter on June 8, 2018. (*Id.* at 8, 17.)

On June 29, 2018, the plaintiff filed a demand for arbitration with the American Arbitration Association, claiming "sexual harassment, retaliation, unlawful discharge, emotional torture, and more . . . ." (No. 11-1 at 19.) The parties began the arbitration process shortly thereafter. The plaintiff questioned the Association's pro se administrator about the process, (*Id.* at 88-89), and the parties mutually chose an arbiter. (*Id.* at 97-98, 111.)

The process broke down when the arbiter disclosed that he had previously worked with counsel for Dish Network on mediations. (*Id.* at 101.) The plaintiff argued that the arbiter had a conflict of interest and that his compensation rate was too high. (ECF No. 1 at 30-31.) She complained that his appointment demonstrated that the arbitration process would be unfair, and she withdrew her claims. (ECF No. 1 at 28, 31.)

---

[2] The plaintiff also claims that the coach regularly hit the back of her chair, slamming her into her desk and injuring her ribs. (*Id.* at 12.)

3

The plaintiff subsequently filed this action on August 30, 2018. (ECF No. 1.) The plaintiff also claims to have reported the defendant to the Securities and Exchange Commission, the Federal Communications Commission, the Federal Trade Commission, and the Financial Industry Regulatory Authority. (*Id.* at 41.)

## DISCUSSION

Allegations in a *pro se* complaint are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court must read a *pro se* complaint liberally and interpret it to raise the strongest arguments it suggests, especially when it alleges civil rights violations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Weixel v. Bd. of Educ. Of City of New York*, 289 F.3d 138, 146 (2d Cir. 2002) (citing *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)).

The Court liberally construes the complaint as asserting discrimination, hostile work environment, and retaliation based on the plaintiff's national origin[3] and sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, the New York State Human Rights Law, § 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* The complaint also claims that she is entitled to whistleblower protection under the Sarbanes-Oxley Act, 18 U.S.C.A. § 1514A.[4]

---

[3] In her complaint, the plaintiff did not mark "national origin" as one basis for her claim. (ECF No. 1 at 4.) "Merely checking a box, or failing to check a box does not necessarily control the scope of the charge." *Cooper v. Xerox Corp.*, 994 F.Supp. 429, 436 (W.D.N.Y. 1998). Here, the plaintiff's complaint includes at least one allegation that a colleague referred to her in a "rude and racial" way as "hired help" and "aiy Bengali." (*Id.* at 11.)

[4] In a single sentence in her complaint, the plaintiff claims a violation of the Equal Pay Act, 29 U.S.C. § 206, *et seq.*, because her "performance management metrics were 'managed' beyond her" performance. (ECF No. 1 at 14.) This naked assertion, without factual content, is insufficient to state a claim. Additionally, in a letter dated May 19, 2019, the plaintiff refers to her "request for representation." The record does not demonstrate that the plaintiff has ever moved to have counsel appointed. In any event, her request is denied. "[I]t is well-settled that, except when faced with the prospect of imprisonment, a litigant has no legal right to counsel in civil cases." *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 453 (2d Cir. 2013) (citations omitted). The Court cannot compel an attorney to represent a litigant

## I. Motion to Compel Arbitration

The plaintiff's discrimination, hostile work environment, and retaliation claims are subject to arbitration. Motions to compel arbitration are evaluated under a standard similar to the standard for summary judgment motions. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171 at 175 (2d Cir. 2003)). The court must "consider all relevant admissible evidence" and "draw all reasonable inferences in favor of the non-moving party." *Faggiano*, 283 F.Supp.3d at 36. If a dispute's arbitrability can be decided as a matter of law based on undisputed facts in the record, the court "may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat'l Ass'n v. VCG Special Opp. Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) (quoting *Bensadoun*, 316 F.3d at 175).

The Federal Arbitration Act[5] provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006) (The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts").

---

in a civil case without a fee. *Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989). Rather, the Court may only request that an attorney volunteer to take the case, and even then, considers various factors before making the request. The primary consideration is whether the plaintiff's position is "likely to be of substance." *Ferelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 204 (2d Cir. 2003). The plaintiff's complaint does not establish the threshold requirement that her claims are "likely to be of substance." Accordingly, plaintiff's request for pro bono counsel is denied with prejudice.

[5] The parties do not dispute that the FAA applies to the at-issue arbitration agreement.

5

The court should consider (1) whether the parties agreed to arbitrate, (2) the scope of the arbitration agreement, and (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004) (citation omitted). If some, but not all, of the claims in the case are arbitrable, the court must consider whether to stay the balance of the proceedings pending arbitration. *Id.* Arbitration clauses can be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability[.]" *AT&T Mobility LLC*, 563 U.S. 333, 339 (2011) (citations omitted).

### A. The parties' arbitration agreement is enforceable.

The FAA requires only that an arbitration agreement be in writing, not that it be signed. *Thomas v. Pub. Storage, Inc.*, 957 F. Supp. 2d 496, 499 (S.D.N.Y. 2013) (citing *Gonzalez v. Toscorp Inc.*, No. 97-cv-8158 (LAP), 1999 WL 595632, at *2 (S.D.N.Y. Aug. 5, 1999)). A non-signatory "may be bound by an arbitration clause if its subsequent conduct indicates that it is assuming the obligation to arbitrate." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995); *see also Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1105 (2d Cir. 1991).

The plaintiff admits that she signed an arbitration agreement with the defendant, thus indicating her consent to the process. (ECF No. 1 at 32.) *See Schreiber v. Friedman*, 2017 WL 5564114, at *6 (E.D.N.Y. Mar. 31, 2017) (citing *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987) ("[A] party is bound by the provisions of a contract that [s]he signs, unless [s]he can show special circumstances that would relieve h[er] of such an obligation")). Even if the plaintiff had not signed the arbitration agreement,[6] her subsequent conduct manifests

---

[6] The plaintiff asserts that the initial arbitration agreement is void because she signed a second agreement without knowing its terms and under threat of termination. (ECF No. 1 at 14; ECF No. 14 at 5.) The

a clear intent to arbitrate: she began the arbitration process, sent an arbitration demand letter with a copy of the arbitration agreement, inquired about the arbitration process, and chose an arbitrator before she prematurely withdrew her claims from arbitration. Thus, the parties' arbitration agreement is enforceable.

### B. The plaintiff's discrimination claims are within the scope of the arbitration agreement.

The arbitration agreement mandates arbitration for "any claim or dispute arising out of or related to Employee's . . . employment, and/or termination of employment." (ECF No. 1 at 49; ECF No. 11-1 at 2-4.) A presumption of arbitration arises, even over collateral matters, when an arbitration clause is broad. *JLM Indus., Inc.*, 387 F.3d at 172 (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotation marks and citations omitted). "[D]oubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *E.E.O.C. v. Rappaport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 461 (E.D.N.Y. 2006) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).

The arbitration agreement that the plaintiff signed is broad, *see Johnston v. Electrum Partners LLC*, 2018 WL 3094918, at *10 (S.D.N.Y. June 21, 2018) (citing *Mehler v. Terminix Int'l Co. L.P.*, 205 F.3d 44, 49 (2d Cir. 2000) (clause providing arbitration for "any controversy or claim between [the parties] arising out of or relating to" a contract is "classically broad")),

---

plaintiff's allegations, which are assumed to be true, are not enough to show duress. *See Kearins v. Panalpina, Inc.*, 570 Fed. App'x 9, 10 (2d Cir. 2014) (summary order) ("[A] person who signs an agreement is conclusively bound by it even if [s]he did not read the agreement or understand its terms"); *see also Williams v. Parkell Prod., Inc.*, 91 F. App'x 707, 708 (2d Cir. 2003) (summary order) ("It is well-settled, however, that conditioning employment on the acceptance of an agreement to arbitrate disputes, including those arising under civil rights laws, is not itself unlawfully coercive"). Even if the updated contract was void, the plaintiff does not explain why the first contract – which she admits she signed – would also be void.

and the plaintiff's various discrimination claims relate to her employment and termination.[7] While the agreement does not explicitly state that discrimination claims are subject to arbitration, "arbitration clauses may cover statutory claims even if the clause at issue does not mention the specific statutes or statutes in general." *Thomas*, 957 F.Supp.3d at 500 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 64, 615 (1985) (internal quotations omitted)). Thus, the plaintiff's discrimination claims are within the scope of arbitration.

### C. The plaintiff's discrimination claims are not subject to legislative preemption.

Neither Congress nor the state and city legislatures have precluded Title VII, NYSHRL, and NYCHRL claims from arbitration. *See, e.g., Thomas*, 957 F. Supp. 2d at 496 (compelling arbitration of an employee's Title VII, NYSHRL, NYCHRL sex discrimination and retaliation claims); *see also Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999) (concluding that the plaintiff failed to show that Congress intended to preclude the waiver of judicial remedies for Title VII claims). Thus, the plaintiff's discrimination claims are not precluded from arbitration.

The plaintiff's whistleblower claim, however, is not subject to arbitration. *See Wong v. CKX, Inc.*, 890 F. Supp. 3d 411, 421 (S.D.N.Y. 2012) ("In 2010, Congress passed the Dodd–Frank Act. Section 922 of that Act amended the Sarbanes–Oxley Act to bar the arbitration of whistleblower claims").

---

[7] To the extent the plaintiff alleges that she was fired for refusing to participate in fraud, the claim also arises out of her employment and termination and thus is subject to arbitration.

8

## II. Motion to Dismiss and Order to Stay

When some, but not all, of a lawsuit's claims are arbitrable, the court must consider whether to stay the balance[8] of the judicial proceedings pending arbitration. *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d at 169. "Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Cohen v. UBS Fin. Servs., Inc.*, 12-CV-2147 (BSJ) (JLC), 2012 WL 6041634, at *2 (S.D.N.Y. Dec. 4, 2012).

The plaintiff's sole claim that is not subject to arbitration[9] – for whistleblower protection under the Sarbanes-Oxley Act, 18 U.S.C.A. § 15A – is dismissed as time-barred. To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings must be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). At the motion to dismiss stage, the court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the

---

[8] The plaintiff requested a stay on February 14, 2019. (ECF No. 18.) The FAA "mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." *Faggiano*, 283 F.Supp.3d at 37 (citing *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015)).

[9] The plaintiff also claims that "consumers in 10 states must be made aware of their right pertaining to protection plan & tech visits." (ECF No. 1 at 6.) To the extent the plaintiff alleges consumer fraud, she has no standing to assert that claim because she does not claim to be a consumer injured by the alleged fraud. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (collecting cases) (standing requires a "particularized" injury, meaning it "must affect the plaintiff in a personal and individual way"). Even if she is a consumer, a *pro se* plaintiff cannot bring a class action lawsuit. *See Ackers v. United Nations*, No. 05-CV-1200 (FB), 2005 WL 806592, at *1 n.1 (Apr. 8, 2005) ("The Court notes that a class action cannot be maintained by *pro se* litigants").

9

complaint by reference." *Williams*, 440 F. App'x at 9 (quoting *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

An employee must file a complaint with the Occupational Safety and Health Administration before asserting a claim under the Sarbanes-Oxley Act in federal court. *Fraser v. Fid. Trust Co., Intern.*, No. 04-CV-6958 (RMG) (GWG), 2005 WL 6328596, at *6 (S.D.N.Y. June 23, 2005) (citing *Willis v. Vie Fin. Group, Inc.*, No. 04-CV-435, 2004 WL 1774575, at *6 (E.D. Pa. Aug. 6, 2004)). "A person who alleges discharge or other discrimination by any person in violation of [Section 806] may seek relief . . . if [OSHA] has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant, [by] bringing an action at law or equity for de novo review in the appropriate district court of the United States . . . ." 18 U.S.C. § 1514A(b)(1)(B).

The plaintiff never filed a complaint with OSHA, (ECF No. 14 at 9), and thus failed to exhaust her administrative remedies before filing this complaint.[10] Accordingly, the plaintiff's whistleblower complaint is dismissed under Rule 12.

## CONCLUSION

For the reasons stated above, the plaintiff's claim under the Sarbanes-Oxley Act is dismissed with prejudice. The Court grants the defendant's motion to compel arbitration and stays the action pending the outcoming of that proceeding.[11]

---

[10] The plaintiff also requested that the Court equitably toll the filing of her Sarbanes-Oxley complaint with OSHA. (*See, e.g.*, ECF No. 21 at 3.) However, only OSHA – not the Court – can equitably toll a complaint with the administration. 29 C.F.R. § 1980.103(d) ("OSHA may consider the time for filing a complaint equitably tolled if a complainant mistakenly files a complaint with another agency instead of OSHA within 180 days after becoming aware of the alleged violation").

[11] In a single sentence in its motion to dismiss, the defendant requests attorneys' fees and costs for having to make the motion. (ECF No. 10 at 13.) The defendant cites no authority in support of its application. Thus, the defendant's request is denied.

**SO ORDERED.**

                                                         s/Ann M. Donnelly
                                                   _____
                                                   Ann M. Donnelly
                                                 United States District Judge

Dated: July 8, 2019
       Brooklyn, New York